UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEARCE BREWINGTON YOST, | ) | CIVIL ACTION NO. 3:16-cv-1444 |
| Plaintiff | ) | |
| | ) | (NEALON, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| NANCY A. BERRYHILL[1], | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff Pearce Brewington Yost ("Mr. Yost"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

This matter has been referred to me to prepare a report and recommend pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons explained herein, I find that the final decision of the Commissioner is supported by substantial evidence, and

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

RECOMMEND that this decision be AFFIRMED. Mr. Yost's request for relief should be DENIED.

## II.    STATEMENT OF FACTS AND OF THE CASE

In February 2013, Mr. Yost applied for benefits alleging a disability onset of January 12, 2012, when he was forty-two years old, due to the impairments of cerebral palsy, arthritis, and depression. (Admin. Tr. 209). Mr. Yost's allegations in this case are limited to the ALJ's evaluation of his mental limitations. Therefore, my discussion of the evidence is limited to the portions of the record that pertain to the arguments raised by Mr. Yost.

Mr. Yost and his wife both attested to the fact that Mr. Yost has had great difficulty maintaining consistent employment. Mr. Yost's wife testified that Mr. Yost lost jobs primarily due to speech and mobility issues. (Admin. Tr. 50-51). Before he applied for benefits, Mr. Yost attempted to find work through the Office of Vocational Rehabilitation ("OVR"). Mr. Yost was referred to William J. Fernan ("Dr. Fernan") by OVR in connection with his request for vocational services. Dr. Fernan assessed that Mr. Yost's motor and sensory problems would be a significant drawback in many "performance type" occupations, but that he would excel in fields where he could use his good academic achievement and mathematical skills. Dr. Fernan noted that Mr. Yost would not be suitable for

positions that require good work speed or organizing and planning skills. (Admin. Tr. 285). Dr. Fernan opined that Mr. Yost's chances of finding steady employment would be improved with vocational counseling.

In connection with the initial administrative review of Mr. Yost's applications, State agency psychologist James Vizza ("Dr. Vizza") provided a medical opinion based on the evidence available. Dr. Vizza assessed that Mr. Yost suffered from an organic mental disorder, affective disorder, and anxiety-related disorder. (Admin. Tr. 65). He assessed that these impairments result in moderate difficulty maintaining concentration, persistence, or pace. *Id.* Dr. Vizza assessed that Mr. Yost had no significant impairment in understanding or memory, but would be moderately limited in his ability to maintain concentration for extended periods, moderately limited in his ability to complete a normal workday and workweek without interruptions from his symptoms, and moderately limited in his ability to perform at a consistent pace without an unreasonable number or length of rest periods. (Admin. Tr. 67). Nonetheless, Dr. Vizza assessed that Mr. Yost could be expected to maintain regular attendance, carry out instructions, make work related decision, and meet the basic mental demands of competitive work on a sustained basis. *Id.*

On May 15, 2013, Mr. Yost's applications were denied at the initial level of administrative review. The adjudicator found that Mr. Yost had no physical limitations, but was limited to unskilled work due to his mental impairments. (Admin. Tr. 69).

On October 25, 2013, Mr. Yost was referred to Matthew W. Bridgman ("Dr. Bridgman"). Dr. Bridgman assessed that Mr. Yost's cognitive deficits would adversely affect his ability to successfully maintain employment in an independent work environment. Dr. Bridgman also assessed that Mr. Yost was disabled, but noted that *if* employment was pursued, a number of requirements would be needed to facilitate success. (Admin. Tr. 359). Dr. Bridgman assessed that Mr. Yost would be more successful in jobs that involve a consistent routine, repetition, stability of job responsibilities, and the ability to learn and perform the job at his own pace. *Id.*

Several months later Dr. Bridgman completed a Psychiatric Review Technique questionnaire based on the single examination he did in October 2013. Dr. Bridgman noted that Mr. Yost had no severe mental impairment, but that his impairments did interfere with occupational functioning to the extent that Mr. Yost

has been unable to maintain consistent employment.[2] (Admin. Tr. 342). Dr. Bridgman assessed that Mr. Yost met the diagnostic criteria of listing 12.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1, but did not meet the severity criteria of paragraph B or paragraph C of the listing.

On June 2, 2014, Mr. Yost appeared and testified at a video hearing before Administrative Law Judge Barbara Artuso ("ALJ"). Mr. Yost appeared with his attorney in Dubois, Pennsylvania, and the ALJ presided over the hearing from Johnstown, Pennsylvania. Impartial vocational expert Mark Heckman ("VE Heckman"), and Mr. Yost's wife, Erin Yost ("Mrs. Yost"), also appeared and testified during the hearing.

On August 29, 2014, the ALJ issued a written decision denying Mr. Yost's applications for benefits because she found that the combination of Mr. Yost's medically determinable severe and non-severe impairments did not prevent Mr. Yost from engaging in other work as an inspector/hand packer (DOT #559.687-

---

[2] In the context of Social Security Disability appeals, an impairment is non-severe if it does not significantly limit a claimant's ability to basic work activities such as: understanding, carrying out, and remembering simple instructions; using judgment; and, dealing with changes in a routine work setting. 20 C.F.R. §§404.1521, 416.921(effective until Mar. 27, 2017)(recodified at 20 C.F.R. §§404.1522, 416.922). From time-to-time medical source may provide opinions or statements that appear to use the terms set out in the Commissioner's regulations or rulings. I need not assume that a medical source who uses this terminology is aware of the Commissioner's definition. *See e.g.*, SSR 96-5p, 1996 WL 374183 at *5 *rescinded by* 82 Fed. Reg. 5844-01, 5845 (Jan. 18, 2017) (rescission effective Mar. 27, 2017).

074), electrical equipment inspector (DOT #727.687-062), and a wire worker (DOT #728.684-022) during the relevant period.

Upon receipt of the ALJ's written decision, Mr. Yost sought review of his applications by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). Together with his request, Mr. Yost submitted new evidence that was not before the ALJ when she issued her decision. (Admin. Tr. 268-276).

On May 23, 2016, the Appeals Council denied Mr. Yost's request. This denial makes the ALJ's 2014 decision the final decision of the Commissioner denying Mr. Yost's applications for benefits. The ALJ's 2014 decision is subject to judicial review pursuant to 42 U.S.C. §405(g).

On July 14, 2016, Mr. Yost initiated this action by filing a complaint. (Doc. 1). In his complaint, Mr. Yost seeks a judgment for such relief as may be deemed proper by the Court. *Id.*

On September 14, 2016, the Commissioner filed her answer. (Doc. 10). The Commissioner maintains that the ALJ's written decision denying Mr. Yost's applications was made in accordance with the law and regulations, and is based on findings of fact that are supported by substantial evidence. *Id.* Together with her

answer, the Commissioner filed a certified transcript of the administrative proceedings in this case. (Doc. 11).

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 12); (Doc. 13).

III.    LEGAL STANDARDS

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, my review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before me, therefore, is not whether Mr. Yost is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    INITIAL BURDENS OF PROOF, PERSUASION, AND
      ARTICULATION FOR THE ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §

423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.912 (effective Apr. 20, 2015, to Mar. 26, 2017); *Mason*, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1512(f), 416.912(f) (effective Apr. 20, 2015, to Mar. 26, 2017); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in

his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## C. LEGAL BENCHMARKS FOR THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).[3] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(b), 416.927(b).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Under

---

[3] The Commissioner made significant changes to her policy on the evaluation of medical opinion evidence during the pendency of this action that became effective on March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed.Reg. 584401 (Jan 18, 2017). These revisions included "redefining several key terms related to evidence, revising our rules about acceptable medical sources (AMS), revising how we consider and articulate our consideration of medical opinions and prior administrative medical findings, revising our rules about medical consultants (MC) and psychological consultants (PC), revising our rules about treating sources, and reorganizing our evidence regulations for ease of use." *Id.* For ease of use, the Commissioner codified her policy in effect before March 27, 2017, in 20 C.F.R. §§404.1527 and 416.927, and directed that this regulation be applied to all claims filed before March 27, 2017. Although the treating source rule was eliminated in the new regulations, it still applies to applications filed before March, 27, 2017.

some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)(defining treating source); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)(explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)("We will always give good reasons in our notice of determination or

decision for the weight we give your treating source's medical opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

IV.   <u>ANALYSIS</u>

In this case, Mr. Yost contends that the ALJ's evaluation of two neuropsychological opinions by sources who examined Mr. Yost one time was not in accordance with the Commissioner's regulations for the evaluation of medical opinion evidence. First, he contends that the ALJ's failure to incorporate, or otherwise explain her failure to incorporate, portions of Dr. Furnan's opinion regarding limitations that were not addressed in the ALJ's decision renders the ALJ's RFC assessment defective. Second, he argues that the ALJ unreasonably inferred that Dr. Furnan's recommendation for vocational counseling was consistent with the ability to work. Third, he contends that the ALJ violated 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) by failing to comply with the "good reasons" requirement when he discounted the opinion of Dr. Bridgman. For the reasons articulated herein, I find that these arguments are not persuasive, but first I

turn my attention to the ALJ's findings in the final decision denying Mr. Yost's claims.

A.    THE ALJ'S DECISION DENYING MR. YOST'S APPLICATIONS FOR BENEFITS

In her written decision, the ALJ evaluated Mr. Yost's application at each step of the sequential evaluation process. The ALJ also found that Mr. Yost met the insured status requirement of Title II of the Social Security Act through December 31, 2015.

At step one the ALJ found that Mr. Yost did not engage in substantial gainful activity between June 12, 2012, and August 29, 2014 (the "relevant period"). (Admin. Tr. 14).

At step two the ALJ found that, during the relevant period, the evidence of record established the existence of the following medically determinable severe impairments: cerebral palsy, degenerative joint disease of the right great toe, right calcaneal spur, osteoarthritis of the right foot, hallus valgus of the right foot, fibromyalgia, a history of gout, and adjustment disorder with mixed anxiety and depressed mood, a depressive disorder, a dysthymic disorder, a learning disorder, and a cognitive disorder not otherwise specified. (Admin. Tr. 14-15).

At step three the ALJ found that, during the relevant period, Mr. Yost did not have an impairment or combination of impairments that met or medically

equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 15-17).

Between steps three and four, the ALJ found that Mr. Yost retained the RFC to perform "light" work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that:

> He can perform no repetitive pushing/pulling with either upper or lower extremities, can never climb ladders/ropes/scaffold, can have no exposure to workplace hazards, can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, can have no exposure to extreme cold and only occasional exposure to moderate cold and vibration, can have no jobs requiring communication as an essential job task, and is limited to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple, work-related decision, involving the use of the hands for fingering and handling frequently, not constantly, with no overhead reaching and reaching in all other direction limited to frequent, not constant.

(Admin. Tr. 17).

At step four, the ALJ found that Mr. Yost had no past relevant work. (Admin. Tr. 21).

At step five, relying on testimony by VE Heckman, the ALJ found that an individual with the above RFC, and with the same other vocational characteristics of Mr. Yost could engage in other work that exists in significant numbers in the national economy. (Admin. Tr. 21-22).

A "sign" is an anatomical, physiological, or psychological abnormality that is observed apart from a claimant's statements, and is shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1528, 416.928 (effective Mar. 31, 2006, to Mar. 27, 2017). Psychiatric signs, like those at issue in this case, are medically demonstrable phenomena that indicate specific psychological abnormalities (e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception) and must be shown by observable facts that can be medically described and evaluated. 20 C.F.R. §§ 404.1528, 416.928 (effective Mar. 31, 2006, to Mar. 27, 2017).

After administering a battery of neuropsychological tests, Dr. Fernan observed that Mr. Yost would have "significant difficulty" in the following activities or areas: maintaining attention and immediate memory; drawing ability; and writing ability. Dr. Fernan observed that Mr. Yost would have "very poor" ability in the following activities or areas: concrete reasoning; motoric speed; and sustained attention (when dealing with symbolic information, performing complex auditory tasks, or dealing with tactile stimuli). Dr. Fernan observed that Mr. Yost would have "extremely poor" ability in the following activities or areas: sorting

essential from non-essential details; organization skills; and planning skills. Dr. Fernan observed that Mr. Yost would have "severely impaired" function in the following activities or areas: incidental memory; simple motoric speed (bilaterally); and strength of grip (bilaterally).

In her decision, the ALJ accorded "great" weight to the opinion of Dr. Fernan, and explained that "although Dr. Fernan acknowledges the claimant does have some limitations with respect to functioning due to his impairments, his conclusion supports the finding herein that the claimant does have the ability to work at some level." (Admin. Tr. 20).

Mr. Yost contends that it was error for the ALJ to exclude the deficits discussed above from her RFC assessment without offering some explanation, and argues that if the ALJ had properly considered all of the functional deficits assessed by Dr. Fernan there is a reasonable possibility that it would have resulted in a different outcome in this case because these limitations preclude the performance of occupations that require "understanding, remembering and carrying out only simple instructions and making only simple, work-related decisions." In response the Commissioner asserts that the ALJ is not obligated to adopt every aspect of a medical opinion that is accorded "great" or "significant" weight pursuant to *Wilkinson v. Comm'r of Soc. Sec.*, 558 F.App'x 254, 256 (3d

Cir. 2014).

In *Wilkinson*, the claimant argued that the ALJ presented the VE with a defective hypothetical question, because the ALJ's hypothetical question excluded manipulative limitations assessed by a source whose opinion was otherwise accorded "significant weight in conjunction with other relevant evidence." 558 F.App'x at 256. The Court found that the explanation provided in *Wilkinson*–that the opinion was accorded significant weight in conjunction with other relevant evidence–was sufficient based on the facts of that case because the ALJ clearly relied on multiple medical sources to formulate the RFC assessment. *Id.* The Commissioner argues that, in this case, the ALJ did not selectively rely on Dr. Fernan's opinion as Mr. Yost alleges, and that the ALJ's decision as a whole reflects that the ALJ relied on multiple sources to support the RFC assessment.

There is one flaw in the Commissioner's counter-argument. The ALJ in this case did not explain that Dr. Furnan's opinion was accorded "great" weight *in conjunction with other relevant evidence.* In her decision the ALJ noted that Dr. Fernan acknowledged the claimant does have some limitations with respect to functioning due to his impairments, but concluded that Dr. Fernan's conclusion supported the conclusion that Mr. Yost does have the ability to work at some level. (Admin. Tr. 20). Thus, to the extent the Commissioner argues that the ALJ's

decision should be affirmed under *Wilkinson*, I disagree.

Nonetheless, I find that Mr. Yost's argument that the ALJ erred by excluding these limitations fails on its own merits. First, Mr. Yost is mistaken that the ALJ "does not acknowledge or discuss" the deficits assessed by Dr. Fernan. (Doc. 12 p. 8). The ALJ expressly recognized that Dr. Fernan observed that Mr. Yost, "did display significant difficulties with poor attention and immediate memory, drawing ability, writing ability, concrete reasoning, motor speed, and sustained attention, along with attention/concentration for complex auditory tasks and tactile stimuli, sorting of essential information, and incidental memory." (Admin. Tr. 18). Second, although Mr. Yost generally alleges that the ALJ's failure to incorporate these limitations renders the RFC assessment incomplete, Mr. Yost fails to articulate what limitations, if any, were improperly excluded from the ALJ's RFC assessment. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 410(2009)(explaining in a Veteran's Benefits case that "[l]ower court cases make clear that courts have correlated review of ordinary administrative proceedings to appellate review of civil cases in this respect. Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). While in some cases the harm caused by excluding a medical sign might be obvious, it is not obvious in this case. The relative severity of these

"signs" is not immediately clear in Dr. Furnan's report, and neither Dr. Fernan nor Mr. Yost make any attempt to explain what additional limitations might reasonably result if these signs were credited.

    C.    <u>WHETHER THE ALJ UNREASONABLY INFERRED THAT DR. FURNAN'S REPORT IS CONSISTENT WITH A FINDING THAT "MR. YOST COULD BE EMPLOYABLE WITH VOCATIONAL COUNSELING"</u>

At the conclusion of his report, Dr. Fernan recommended that Mr. Yost participate in:

> Vocational counseling with efforts being made to assist [Mr. Yost] in becoming involved in an appropriate educational program and/or occupation. His employability would be seen as being enhanced by his learning to stop and think and to be cautious when he begins new tasks. He would not be seen as appropriate for his expressed interest in computer-aided drafting and his motor and sensory problems would be seen as being very significant drawbacks for many other performance type occupations. Consequently, he may want to give strong consideration to verbal type occupations which took advantage of his good academic achievement and very good mathematical skills, such as being a teacher, office worker or clerk, in positions which did not require good work speed or very good organizing and planning skills. He should also use a calendar, notebook and/or an electronic planner to work around a very high level of forgetfulness and he would have to avoid extensive typing. Given his good ability for learning, thinking ability and general memory he could work in a reasonably independent manner. In a college program he would require some accommodations, as outlined above.

(Admin. Tr. 285).

Mr. Yost argues that the ALJ mischaracterized Dr. Fernan's report, because Dr. Fernan did not opine that Mr. Yost was capable of maintaining full-time

competitive employment.

As an initial matter, we note that Dr. Fernan's report was crafted from the perspective of the Office of Vocational Rehabilitation ("OVR"). It was made under different rules. Given that OVR offered to provide vocational counseling services, it was reasonable for the ALJ to infer that Dr. Fernan's referral was consistent with a finding that Mr. Yost could work. *See* Carolyn Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* §2:47 ("public or private vocational rehabilitation agencies routinely evaluate disability, because they reject as candidates for rehabilitation all individual who are too sick or injured to work."). Furthermore, under the substantial evidence standard, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. In this instance, the ALJ found that Dr. Furnan's opinion supported some capacity for work because vocational counseling was recommended. Mr. Yost contends that an inability to work without participating vocational counseling is compelling evidence of disability. Although

inconsistent conclusions could be drawn from Dr. Fernan's report, because the ALJ's interpretation of this evidence is reasonable, it must be upheld; to find otherwise would be a usurpation of the ALJ's authority.

      D.    <u>WHETHER THE ALJ FAILED TO COMPLY WITH THE "GOOD REASONS" REQUIREMENT OF 20 C.F.R. §404.1527(C)(2) AND 20 C.F.R. § 416.927(C)(2) WHEN SHE DISCOUNTED THE MEDICAL OPINION OF DR. BRIDGMAN</u>

The Commissioner's regulations provide that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinions." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In her decision the ALJ accorded "little" weight to Dr. Bridgman's opinion that Mr. Yost's cognitive deficits would adversely affect Mr. Yost's ability to maintain successful employment in an independent, competitive, work environment. (Admin. Tr. 20). The ALJ explained that Dr. Bridgman was a non-treating source, and that Dr. Bridgman's opinions were internally inconsistent. The ALJ found that "Dr. Bridgman assesses disabling limitations in his residual functional capacity analysis, but his report supports an ability to work." (Admin. Tr. 20).

Mr. Yost argues that the ALJ failed to "give good reasons" in her decision for the weight accorded to the opinion of Dr. Bridgman. In response, the Commissioner argues that, although Dr. Bridgman is not a treating source and is

not subject to the "good reasons" requirement of 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The Commissioner maintains that the ALJ's decision reflects that she properly weighed the applicable factors when she discounted Dr. Bridgman's report.

Although the Commissioner is correct that 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) apply only to treating sources, the ALJ is still obligated to explain her decision to discount Dr. Bridgman's opinion pursuant to *Cotter v. Harris*, which requires an ALJ to provide not only an expression of the evidence he or she considered which supports a conclusion, but also some indication of the evidence that was rejected and a satisfactory explication of the basis on which it rests to allow this Court to perform its statutory function of judicial review. *Cotter*, 642 F.2d at 705.

First, Mr. Yost argues that the ALJ failed to recognize that Dr. Bridgman examined Mr. Yost. Mr. Yost's is mistaken on this point. The ALJ expressly found that Dr. Bridgman was a "nontreating source." *See* 20 C.F.R. §§ 404.1502, 416.902 (effective Jun. 13, 2011, to Mar. 26, 2017)(defining nontreating source as "physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with

you."). Implicit in this finding is recognition that Dr. Bridgman examined Mr. Yost. Thus, Mr. Yost's allegation that the ALJ failed to consider this factor lacks merit.

Next, Mr. Yost argues that the ALJ erred by finding Dr. Bridgman's narrative report and RFC assessment were inconsistent. The two paragraphs that appear to be the source of this dispute are both at the end of Dr. Bridgman's narrative report. Dr. Bridgman's report provides that:

1. Cognitive deficits described above would be anticipated to adversely affect Mr. Yost's ability to maintain successfully employment in an independent, competitive work environment. Although the current evaluation is judged to support disability status, Mr. Yost expressed desire to continue working if he could remain in a stable job. Continuing to participate in the unstable pattern of employment that he has experienced for the last several years would be counterproductive, as it would continue to exacerbate current emotional symptoms and lead to a decline in emotional and cognitive health. Continued employment could be beneficial for emotional and cognitive health, if he can remain in a stable job.

2. If continued employment is pursued, a number of requirements will be needed to facilitate success. He will be more successful in jobs that involve a consistent routine, repetition, and stability of job responsibilities. He will benefits from being able to learn the job at his own pace, and perform the job at his own pace. He will have difficulty in jobs that involve: frequent changing of job duties/responsibilities; fluctuating pace of work; or frequent novel or unfamiliar situations. Such supported employment should be pursued with the assistance of the Office of Vocational Rehabilitation.

(Admin. Tr. 359). Although I agree with Mr. Yost that the ALJ's explanation for

discounting Dr. Bridgman's opinion does not necessarily capture the nuance of Dr. Bridgman's recommendations, Mr. Yost fails to cite a sufficient basis for remand in this case. He asserts that, as a matter of law, an ALJ improperly substitutes his or her own judgment for that of a medical expert when he or she concludes that a medical source's opinion is internally inconsistent.

The Commissioner's regulations provide that evidence is considered inconsistent "when it conflicts with other evidence, *contains an internal conflict*, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. §§ 404.1520b, 416.920b (effective Mar. 26, 2012, to Mar. 26, 2017) (emphasis added). Moreover, the regulations that address the evaluation of opinion evidence provide that the ALJ should consider the consistency of a medical opinion, and explain that the more consistent a medical opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Because the Commissioner expressly provides for a finding of internal conflict in her regulations, I find that, as a general matter, it is not improper for an ALJ reach such a conclusion.

Last, Mr. Yost argues that, the ALJ should have, and did not, meet her obligations to recontact Dr. Bridgman to clarify this report before rejecting it.

The versions of 20 C.F.R. §§ 404.1520b and 416.920b in effect on the date the ALJ's decision was issued provide that an ALJ is required to recontact a medical source only when, after weighing the relevant evidence, the ALJ cannot reach a conclusion about whether the claimant is disabled. There was enough evidence in this case for the ALJ to reach a conclusion on the issue of disability; as such the ALJ did not have an obligation to recontact Dr. Bridgman.

V.    RECOMMENDATION

Accordingly, for the foregoing reasons, we recommend that the ALJ's decision denying Mr. Yost's applications for benefits under Titles II and XVI of the Social Security Act be AFFIRMED as follows:

1.    The Court should issue an order denying Pearce Brewington Yost's request for relief and affirming the final decision of the Acting Commissioner of Social Security;

2.    Final judgment should be issued by separate order in favor of the Acting Commissioner of Social Security and against Pearce Brewington Yost; and,

3.    The clerk of court should close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party

shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation

may constitute a waiver of any appellate rights.

Date: September 15, 2017

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge